**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JASON ROME, | ) |
|        Plaintiff, | ) Case No. _____ |
| v. | ) |
| MICHAEL MCNALLY, PEAK RIDGE CAPITAL GROUP, INC., and PR VISION HOLDINGS, LLC, | ) |
|        Defendants. | ) |

## **COMPLAINT**

Plaintiff Jason Rome, by and through undersigned counsel, complains against defendants Michael McNally, Peak Ridge Capital Group, Inc., and PR Vision Holdings, LLC, as follows.

## **INTRODUCTION**

1. Plaintiff Jason Rome is a founding member of defendant PR Vision Holdings, LLC ("PR Holdings"). Rome has filed this action to recover over four-million dollars that PR Holdings' managing member, Michael McNally, stole by theft and fraud. In breach of his contractual and fiduciary duties to Rome, McNally stole and otherwise withheld certain cash proceeds due to Rome from PR Holdings' sale of a business.

2. In 2018, PR Holdings was formed to pursue vision industry opportunities. PR Holdings acquired Medical Eye Services, Inc. and eventually sold the company to an international eyewear company in 2019. In advance of the sale, Rome and McNally, with McNally acting on behalf of PR Holdings as managing member, negotiated a side letter to govern the division of the sale proceeds.

1

3. As part of the sale, the buyer held back certain funds to be paid in two future installments. Under the side letter, fifty-percent of the holdback funds were due to Rome. The buyer sent the first holdback to PR Holdings in December 2021. McNally and PR Holdings did not distribute any of these funds to Rome. While McNally wrongfully denied Rome his share of the proceeds, McNally falsely continued to hold himself out as a legitimate business partner—stringing Rome along with promises of payment for nearly a year.

4. The buyer agreed to make the second and final payment—$3,307,500, fifty-percent of which belongs to Rome—on December 25, 2022. In early December 2022, the parties negotiated a settlement to resolve how to split this final payment from the buyer. Rome agreed to accept less than the total amount owed to him in the hope of putting this ordeal behind him and immediately recouping at least a portion of the funds owed to him. Following execution of the settlement agreement, as agreed, McNally's counsel sent to Rome's counsel the parties' mutually agreed payment split and the wire transfer instructions McNally was to send to the buyer. McNally said the buyer would send Rome's share of the payment directly to Rome on or before December 25, 2022.

5. Rome, however, did not receive any payment at all from the buyer. Unbeknownst to Rome, Rome's legal counsel, and even McNally's own legal counsel, McNally secretly gave the buyer alternative wire transfer instructions after his lawyer had sent the correct instructions to Rome.

6. Counsel for the buyer later confirmed that "all funds were wired & received according to the last instructions [buyer] received from Mr. McNally." McNally gave separate and contradictory instructions, in breach of the parties' side letter and settlement agreement, in order to steal $2,495,546.44 the buyer was supposed to wire directly to Rome.

7. Not only do McNally, his investment firm, Peak Ridge Capital Group, Inc., and PR Holdings wrongfully possess Rome's portion of the December 25 payout, they are still withholding other funds due to Rome. In total, Rome is entitled to recover the principal amount of $4,323,470 from defendants.

8. Rome is entitled to compensatory damages, punitive, and multiple damages (including under G.L. 93A, § 11), and attorney fees.

## JURISDICTION

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over McNally pursuant to G.L. 223A §§ 2, 3(a), (c), (d).

11. This Court has personal jurisdiction over PR Vision Holdings, LLC, and Peak Ridge Capital Group, Inc., pursuant to G.L. 223A §§ 2, 3(a), (c), (d). PR Vision Holdings and Peak Ridge Capital Group both maintain their principal office in Boston, Massachusetts.

## VENUE

12. Venue lies in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions that give rise to this action took place in the District of Massachusetts and because a substantial part of the property that is the subject of the action is located in the District of Massachusetts.

## PARTIES

13. Plaintiff Jason Rome is an individual resident of the state of California.

14. Defendant Michael McNally is a resident of the state of Massachusetts. Upon information and belief, McNally's primary residence is 14 Bristol Road, Wellesley, Massachusetts, 02481.

15. McNally is the founder of defendant Peak Ridge Capital Group, Inc. ("Peak Ridge"), an investment and asset-management firm. Peak Ridge is a corporation formed and existing under the laws of the state of Delaware with its office and principal place of business located in Boston, Massachusetts.

16. Defendant PR Vision Holdings, LLC, is a limited liability company formed and existing under the laws of the state of Delaware, with its office and principal place of business located in Boston, Massachusetts.

17. McNally is the managing member of PR Holdings. Rome is a member of PR Holdings, along with others.

## FACTUAL BACKGROUND

### I. Rome and McNally form PR Holdings and arrange the sale of MES

18. On September 5, 2018, Rome agreed with McNally and Peak Ridge to form PR Holdings and have their new company take a majority ownership in Malibu Vision, LLC ("Malibu").

19. Malibu owned Medical Eye Services ("MES"). Under PR Holdings' management, Malibu sold MES to an international eyewear company ("Buyer"), on or about February 1, 2019.

20. Under the sale terms, the Buyer was to pay PR Holdings for MES through multiple separate payments.

### II. Rome and PR Holdings enter a Side Letter to allocate certain MES sale proceeds

21. Before the sale, PR Holdings (through McNally) and Rome entered into a Side Letter as of September 5, 2018, to clarify the ultimate cash reconciliation of the proceeds due to

PR Holdings and Rome from the sale of MES, including additional proceeds due to Rome pursuant to his stock ownership in Malibu. The Side Letter provides that "Rome shall own fifty percent (50%) of the equity interests of PR Holdings," and sets forth the terms and conditions of the cash reconciliation post MES sale.

22. Under the Side Letter, PR Holdings' proceeds from the sale of MES were to be distributed as follows:

> a. "PR Holdings and Rome shall split on a 50/50 basis: (a) the cash proceeds received by PR Holdings and (b), the proceeds received by Rome pursuant to his stock ownership in Malibu."
>
> b. The MES Sale Price "shall be deemed to be the purchase price payable in connection with the sale of MES, including any cash on hand or other profits generated by the MES business during its ownership by PR Holdings and its affiliates."
>
> c. PR Holdings "agree[d] that it shall only use the cash of MES and its affiliates in the ordinary course of business consistent with past practice and that any non-ordinary course expenses, costs, investments or payments shall be approved in writing by Rome[.]"

23. Under the Side Letter, all other PR Holdings investors were to be paid first, then the remaining MES sale funds were to be distributed 50% to Rome and 50% to McNally. The Side Letter states that it "shall remain in effect until all or substantially all of the equity percentage interests of PR Holdings are sold." The Side Letter contained the parties' entire agreement, superseding any prior agreements between PR Holdings and Rome, and states it could be modified only by written agreement.

24. The Side Letter and the provisions therein were supported by valid consideration.

**III.   McNally and PR Holdings refuse to release Rome's share of the Buyer's payments**

25. As part of the sale of MES, two holdback payments were due from the Buyer to PR Holdings in June 2021 and December 2022.

5

26. On December 28, 2021, the Buyer released the first holdback payment (due in June 2021) to PR Holdings in the amount of $4,607,500. Pursuant to the Side Letter between Rome and PR Holdings, 50% of these funds were due to PR Holdings and 50% to Rome. In addition, at that time, Rome was also due $25,000, for his one-half of the security deposit for the MES headquarters. Thus, the total distribution due to Rome on December 28, 2021, was $2,328,750. This amount did not include Rome's share of certain earlier payments, which the parties agreed to defer payment to Rome until December 2022.

27. PR Holdings did not distribute any of these funds to Rome and, despite repeated assurances, in writing and orally, still had not distributed any of this amount to Rome by late 2022, when the Buyer's final holdback payment to PR Holdings of approximately $3.3 million was coming due.

**IV.   Rome and PR Holdings enter into a Settlement Agreement to resolve all disputes and govern distribution of the Buyer's final holdback payment**

28. The Buyer was to pay the second and final holdback payment of $3,307,500 on December 25, 2022.

29. At this point, Rome had still not received any of the proceeds from the holdbacks, and other funds, due to him.

30. To avoid further delay and ensure the Buyer would wire Rome's portion of the December 25 payment directly to him, without interference from PR Holdings and McNally, Rome negotiated a settlement agreement with PR Holdings and McNally. Although Rome was owed substantially more, to resolve this dispute, he agreed to accept $2,495,546.44 paid directly to him from the Buyer's upcoming distribution.

31. The parties executed a binding final settlement agreement. On December 13, 2022, McNally signed the Settlement Agreement, personally and on behalf of PR Holdings, and

promised Rome would receive $2,495,546.44 directly from the Buyer on or before December 25, 2022.

32. In the Settlement Agreement, the parties agreed "within one business day of the effective date [December 13, 2022] to instruct [the Buyer] to pay the December 2022 Funds as agreed in paragraph 1 [of the Settlement Agreement], by delivery to [the Buyer] of written instructions mutually agreeable to the Parties."

33. Paragraph 1 of the Settlement provides, in relevant part:

> 1. **Settlement of Amounts Owed**. The Parties acknowledge and agree that from the December 2022 Funds: (a) Rome shall be entitled to receive an amount equal to $2,495,546.44 in full satisfaction, settlement and release of any amounts owed to Rome from PRVH, McNally and their affiliates related to the Funds, Interest and any other amounts related to the Sale and related transactions and (b) PRVH shall be entitled to receive an amount equal to $811,953.56 in full satisfaction, settlement and release of any amounts owed to PRVH, McNally and their affiliates from Rome related to the Funds, Interest and any other amounts related to the Sale and related transactions.
> . . .
> The Parties agree the foregoing distribution of Funds supersedes all prior agreements with respect to the distribution of the Funds.

34. The Settlement Agreement was supported by valid consideration. It contains a release clause only effective "[u]pon each Party's receipt of the full distribution of the Funds in the amounts set forth in paragraph 1."

## V. Defendants' counsel delivered the parties' agreed upon payment instructions to the Buyer

35. On December 14, 2022, counsel for PR Holdings and McNally sent the Buyer's counsel the agreed upon wire instructions, consistent with the terms of the Settlement Agreement, and forwarded his email with the agreed upon instructions to Rome's counsel to confirm compliance with the Settlement Agreement.

7

36. Pursuant to the agreed upon wire instructions, the Buyer was to wire Rome's payment of $2,495,546.44 to his attorney's client-trust account no later than December 25, 2022.

37. Rome did not receive any of the sale proceeds from this second payment.

**VI. Without informing Rome, Rome's counsel, or even his own counsel, and in breach of the Side Letter, the Settlement Agreement, and his fiduciary duty, McNally secretly instructed the Buyer to wire the entire amount owing to him**

38. After Rome did not receive any payment from the Buyer by the deadline of December 25, 2022, Rome, through counsel, contacted the Buyer.

39. On January 13, 2023, counsel for the Buyer responded:

> "I can confirm that all funds were wired & received according to the last instructions [Buyer] received from Mr. McNally."

40. The Buyer was not supposed to receive any further instruction from McNally or PR Holdings. The December 14 email from counsel for PR Holdings and McNally contained the final, mutually agreed upon wire transfer instructions in compliance with the Settlement Agreement.

41. On January 13, 2022, counsel for PR Holdings and McNally sent counsel for Rome an email. In it, counsel for PR Holdings and McNally confirmed:

> "neither [he] nor anyone from [his law firm] (that [he knows] of) changed, or authorized the change of, the payment instructions given to [the Buyer] reflected below in [his] email of December 14, 2022, at 12:58 pm."

The December 14 email was the email in which counsel for PR Holdings and McNally provided the agreed upon wire instructions to the Buyer.

42. Upon information and belief, at some time after counsel for PR Holdings and McNally sent the Buyer the Settlement Agreement wire instructions on December 14, McNally secretly told the Buyer to disregard those instructions and instead follow his own directive to wire the entire amount—$3,307,500—to him alone.

8

43. McNally's actions—which he hid from his own attorney, not to mention from Rome—amounted to theft.

44. PR Holdings sold MES to the Buyer in 2019, but due to defendants' fraud, Rome has yet to receive any of the proceeds from the holdbacks, the security deposit, and certain other payments.

45. Because Rome agreed to defer to the final payment portions of payments received from the Buyer on April 24, 2020, and October 25, 2020, he is entitled to receive an extra $340,970 from the amount of this final payment.

46. In total, Rome is entitled to recover the principal amount of $4,323,470.

## CLAIMS FOR RELIEF

### First Claim for Relief: Breach of Contract – Side Letter
### (PR Holdings)

47. Rome alleges and incorporates herein by reference the allegations in all of the preceding paragraphs of the Complaint.

48. The Side Letter dated September 5, 2018, by and between PR Holdings, with McNally signing for PR Holdings as its Managing Member, and Rome, is a valid contract supported by consideration.

49. Rome has performed or complied in all material respects with his obligations under the Side Letter.

50. Under the Side Letter, PR Holdings made representations to Rome, including, without limitation:

   a. Rome is entitled to own fifty percent (50%) of the equity interests in PR Holdings.

   b. "With respect to any sale of MES, PR Holdings and Rome shall split on a 50/50 basis: (a) the cash proceeds received by PR Holdings and (b), the proceeds received by Rome pursuant to his stock ownership in Malibu."

9

    c.    "A final accounting will be provided to each party upon the completion of all conditions included in any definitive agreement to sell MES."

    d.    "The terms of this Side Letter shall remain in effect until all or substantially all of the equity percentage interests of PR Holdings are sold. Once the Loan has been repaid or discharged in full, none of PR Holdings, MES or Malibu may be sold directly or indirectly without the prior written consent of Rome."

    e.    "This Agreement contains the entire agreement of PR Holdings and Rome hereto and can be modified only by an Agreement in writing and hereby supersedes any other oral or written agreements of PR Holdings and Rome."

51.    As detailed throughout this Complaint, PR Holdings has committed multiple breaches of the Side Letter, including:

    a.    Withholding the $2,328,750 distribution due to Rome from the first holdback payment that the Buyer released to PR Holdings on December 28, 2021;

    b.    Refusing to split the cash proceeds from the MES sale 50/50, and denying Rome the benefit of his 50% ownership of the equity interest in PR Holdings; and

    c.    Refusing to provide Rome with a final accounting from the sale of MES.

52.    As a direct and proximate result of PR Holdings' misconduct, Rome has been deprived of his property and incurred the additional time and expense of recovering and attempting to recover his property, and has been damaged as alleged herein in an amount to be proved at trial of not less than $4,323,470.

## Second Claim for Relief: Breach of Contract – Settlement Agreement
## (McNally and PR Holdings)

53.    Rome alleges and incorporates herein by reference the allegations in all of the preceding paragraphs of the Complaint.

54.    The Settlement Agreement dated December 14, 2022, by and between McNally, PR Holdings, and Rome is a valid contract supported by consideration.

55.    Rome has at all times relevant to this Complaint been ready, willing, and able to perform his duties under the Settlement Agreement.

56. As detailed throughout this Complaint, McNally and PR Holdings committed multiple breaches of the Settlement Agreement, including:

    a. Preventing Rome from receiving the $2,495,546.44 the parties agreed he was owed in satisfaction, settlement, and release of amounts due from the sale of MES;

    b. Unilaterally redirecting the wire transfer of Rome's portion to McNally and/or PR Holdings' own account, by sending his own secret written instructions to the Buyer, in violation of Paragraph 2 of the Settlement Agreement.

57. McNally and PR Holdings secretly breached the Settlement Agreement's explicit, mutually agreed upon payment term immediately.

58. As a direct and proximate result of their breach, Rome has been deprived of his property and incurred the additional time and expense of recovering and attempting to recover his property, and has been damaged as alleged herein in an amount to be proved at trial of not less than $2,495,546.44.

**Third Claim for Relief: Breach of Implied Covenant of Good Faith and Fair Dealing (McNally and PR Holdings)**

59. Rome alleges and incorporates herein by reference the allegations in all of the preceding paragraphs of the Complaint.

60. In connection with the Side Letter and Settlement Agreement, McNally and PR Holdings owed Rome an implied covenant of good faith and fair dealing.

61. The actions of McNally and PR Holdings, as alleged in this Complaint, breached the implied covenant of good faith and fair dealing. McNally and PR Holdings have no lawful or legitimate purpose for their conduct, which has prevented Rome from realizing the benefits due to him under their contracts. For example, McNally and PR Holdings made repeated assurances to Rome that he would receive his portion of the funds, inducing Rome to delay his efforts to enforce his rights to the MES cash proceeds. McNally and PR Holdings also induced Rome to

agree to defer receiving his portions of the payments PR Holdings received from the Buyer on April 24, 2020, and October 25, 2020. Rome believed at the time that McNally and PR Holdings were acting in good faith and not scheming to deprive Rome of his share of the proceeds.

62. As a direct and proximate result of the misconduct of McNally and PR Holdings, Rome has been deprived of his property and incurred the additional time and expense of recovering and attempting to recover his property, and has been damaged as alleged herein in an amount to be proved at trial of not less than $4,323,470.

## Fourth Claim for Relief: Breach of Fiduciary Duty
### (McNally)

63. Rome alleges and incorporates herein by reference the allegations in all of the preceding paragraphs of the Complaint.

64. McNally is the managing member of PR Holdings, and under the Operating Agreement, owed Rome, as a member and beneficiary of PR Holdings, duties of care, loyalty, candor, and independence.

65. Due to McNally's bad faith and fraudulent conduct, as detailed throughout this Complaint, section 8.12 of the Operating Agreement, "Liability and Indemnification of Manager," does not restrict McNally's duties and liabilities to Rome.

66. McNally breached his fiduciary duty to Rome through his acts of intentional misconduct, theft, fraud, and other knowing violations of law because, among other reasons:

   a. McNally defrauded Rome, engaged in self-dealing, and breached the Side Letter and Settlement Agreement by stealing the $2,495,546.44 the Buyer was supposed to wire directly to Rome.

   b. McNally continues to act for his own advantage, abuse Rome's trust, and withhold certain cash proceeds due to Rome from PR Holdings' cash proceeds.

   c. McNally failed to perform his "duties as a Manager in good faith, in a manner reasonably believed to be in the best interests of the Company, and with such

        care as an ordinarily prudent person in a like position would use under similar circumstances," in violation of section 8.6 of the Operating Agreement ("Performance of Duties").

    d. McNally deliberately concealed his misconduct from Rome.

    e. McNally fraudulently induced Rome to enter into the Settlement Agreement by concealing his breach of fiduciary duties and his intent to prevent Rome from realizing benefits owed to Rome as a member of PR Holdings and holder of fifty percent (50%) of the equity interests of PR Holdings.

67. McNally's breaches of his fiduciary duties have caused Rome substantial damages at least in the amount of $4,323,470. McNally has no lawful or legitimate purpose for his misconduct as managing member.

### Fifth Claim for Relief: Fraud
### (All Defendants)

68. Rome alleges and incorporates herein by reference the allegations in all of the preceding paragraphs of the Complaint.

69. McNally, Peak Ridge, and PR Holdings committed fraud upon Rome by wrongfully taking the funds due to Rome under the Side Letter and the Settlement Agreement into their own possession and concealing that they never intended to deliver Rome's share of the proceeds from the MES sale.

70. The false representations and omissions made by defendants induced Rome into entering into the PR Holdings Operating Agreement and later signing the Side Letter and the Settlement Agreement.

71. In furtherance of defendants' fraud on Rome, McNally misrepresented to the Buyer his authority in directing all funds, including those due to Rome under both the Side Letter and the Settlement Agreement, be wired to his own bank accounts.

72. McNally told the Buyer that he had a benign purpose for replacing the agreed upon instructions with his own directive when, in fact, he acted to steal Rome's portion without McNally's own counsel or Rome finding out.

73. McNally knew when he made these representations he was breaching the agreed upon wire instructions.

74. McNally intended the Buyer rely on his misrepresentations in following his wire instructions.

75. McNally's misrepresentations were material, in that the Buyer would have appropriately apportioned the wire transfers between bank accounts of Rome and PR Holdings, had McNally not instructed the Buyer to disregard his counsel's original instructions.

76. Also, in entering into the Operating Agreement, Side Letter, and the Settlement Agreement, defendants misrepresented to Rome that they intended to abide by the terms of those agreements.

77. Defendants knew when they made these representations they were false.

78. Defendants intended for Rome rely on their misrepresentations.

79. Their misrepresentations were material in that Rome would have, among other actions, taken further steps to protect his property and business interests if defendants had disclosed their intent to deprive Rome of his share of the proceeds from the sale of MES to the Buyer.

80. Rome's reliance on McNally's representations was justified because he believed that, as managing member of PR Holdings and in his personal capacity, McNally would act with loyalty, candor, and in good faith.

81. Rome did not know of defendants' fraudulent scheme to deprive him of his share of the proceeds from their business venture and, had he been aware of defendants' theft and

fraud, he would not have (i) entered into a business venture with defendants, nor subsequently (ii) delayed his efforts to enforce his rights, and (iii) agreed to accept less than the full amount contractually due to him in exchange for the false promise of immediate payment.

82. As a direct and proximate result of defendants' misconduct, McNally has deprived Rome of his property and incurred the additional time and expense of recovering and attempting to recover his property, and has been damaged as alleged herein in an amount to be proved at trial of not less than $4,323,470.

83. Defendants took these actions knowingly, willfully, and in conscious disregard of Rome's rights. Accordingly, Rome is also entitled to recover punitive damages in an amount to be determined.

### Sixth Claim for Relief: Conversion
### (All Defendants)

84. Rome alleges and incorporates herein by reference the allegations in all of the preceding paragraphs of the Complaint.

85. As a member of PR Holdings, and under the Operating Agreement, Side Letter, and Settlement Agreement, Rome is legally entitled to his portion of the Buyer's payments to PR Holdings.

86. Defendants wrongfully stole the funds the Buyer was supposed to wire to Rome on December 25, 2022, by McNally misrepresenting his authority to the Buyer and unilaterally changing the payment instructions to induce the Buyer to wire its entire final payment to an account under the control of defendants.

87. Under the terms of the agreements between the parties, McNally had no right to unilaterally redirect funds due to Rome and no right of possession to Rome's share.

88. Defendants intended to and currently possess Rome's property in the form of the stolen funds, and thereby caused a loss of Rome's property.

89. Defendants are intentionally and wrongfully exercising ownership, control, and dominion over these funds over which they have no right of possession.

90. Rome has demanded defendants return all of his property in their possession. Defendants have not complied with such requests.

91. As a direct and proximate result of defendants' misconduct, Rome has been deprived of his property and incurred the additional time and expense of recovering and attempting to recover his property, and has been damaged as alleged herein in an amount to be proved at trial of not less than $4,323,470.

92. Defendants committed these actions knowingly, willfully, and in conscious disregard of Rome's rights. Accordingly, Rome is also entitled to recover punitive damages in an amount to be determined.

**Seventh Claim for Relief: Unfair and Deceptive Trade Practices Under G.L. 93A, § 11**
**(All Defendants)**

93. Rome alleges and incorporates herein by reference the allegations in all of the preceding paragraphs of the Complaint.

94. Rome is engaged in the conduct of trade and commerce.

95. Defendants are engaged in the conduct of trade and commerce.

96. Defendants have engaged in unfair methods of competition and unfair and deceptive acts and practices as alleged in this Complaint.

97. Defendants' conduct occurred primarily and substantially within Massachusetts.

98. Rome has suffered loss of money and property as a result of the use and employment by defendants of unfair and deceptive acts and practices.

99. Defendants' breaches of contract as alleged in this Complaint were intentional breaches of known contractual duties. Defendants intended such breaches to secure benefits for themselves at Rome's expense. McNally's breach of his fiduciary duties to Rome was unfair and deceptive, and intended to unfairly enrich himself at Rome's expense.

100. As a direct and proximate result of defendants' misconduct, Rome has been deprived of his property and incurred the additional time and expense of recovering and attempting to recover his property, and has been damaged as alleged herein in an amount to be proved at trial of not less than $4,323,470.

101. Defendants' unfair methods of competition and unfair and deceptive acts and practices were willful and knowing, and they caused harm to Rome such that Rome is entitled to treble damages under G.L. 93A, § 11. Rome also is entitled to attorney's fees and costs under G.L. 93A, § 11.

## PRAYER FOR RELIEF

WHEREFORE, Rome prays for judgment in his favor and requests relief as follows:

- Damages in an amount to be determined at trial;
- Treble damages pursuant to G.L. 93A, § 11;
- Attorney fees, costs, and expenses; and
- Any other relief as this Court deem just and proper.

Respectfully submitted,

Jason Rome,

By his counsel,

/s/ *Michael Kendall*
Michael Kendall (BBO # 544866)
Abigail Mahoney (BBO# 709427)
WHITE & CASE LLP
75 State Street

Boston, MA 02109-1814
Telephone: (617) 979-9300
michael.kendall@whitecase.com
abigail.mahoney@whitecase.com

Bryan A. Merryman
(*Pro hac vice* forthcoming)
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071-2433
Telephone: (213)620-7700
bmerryman@whitecase.com

*Counsel for Plaintiff*
*Jason Rome*

Dated:  April 6, 2023