```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
_____
                              )
JASON ROME,                   )
                              )
          Plaintiff,          )
                              )
     v.                       )    CIVIL ACTION
                              )    NO. 23-10747-WGY
MICHAEL MCNALLY,              )
PEAK RIDGE CAPITAL GROUP, INC.,)
PR VISION HOLDINGS, LLC,      )
                              )
          Defendants.         )
                              )
_____)
```

YOUNG, D.J.                                        February 26, 2024

## MEMORANDUM & ORDER

The plaintiff Jason Rome ("Rome") asserts seven claims against the defendants Michael McNally ("McNally"), Peak Ridge Capital Group, Inc. ("Peak Ridge"), and PR Vision Holdings, LLC ("PR Holdings") (collectively, "Defendants") arising out of the parties' business relationship and contractual agreements concerning their joint venture. Compl., ECF No. 1. The parties filed various motions. Specifically, Rome filed a Motion for Approval of Attachment of Real Estate against McNally in the sum of $2,495,546.44 pursuant to Federal Rule of Civil Procedure 64(b), Massachusetts Rules of Civil Procedure 4.1 and 65, and Mass. Gen. Laws ch. 214, § 3(8) and 223, §§ 42 et seq. Mot. Appr. Att. Real Estate, ECF No. 10. The Defendants then filed a Motion to Transfer the Case to the United States District Court

[1]

for the Southern District of New York pursuant to 28 U.S.C. § 1404(a), or in the alternative, Dismiss on the Grounds of Forum Non Conveniens.  Mot. Dismiss or Transfer, ECF No. 16.  Both motions are opposed.  On August 17, 2023, another Session of this Court held a hearing on the parties' respective motions.  Elec. Clerk's Notes, ECF No. 26.  For the reasons explained below, the Defendants' Motion to Transfer is **ALLOWED** and its alternative Motion to Dismiss is **DENIED**.  In light of this ruling, Rome's Motion to Attach Real Estate is **DENIED** as moot.

## I. BACKGROUND

McNally, a resident of Massachusetts, is the founder of Peak Ridge, an investment and asset management firm.  Compl. ¶¶ 14-15, ECF No. 1.  In 2018, McNally, Peak Ridge, and Rome, a resident of California, founded PR Holdings, which was created "to pursue vision industry opportunities." Id. ¶¶ 2, 13.  Rome alleges that the parties executed an operating agreement ("Operating Agreement") for PR Holdings.  Id. ¶¶ 76, 70.  Rome is a member of PR Holdings, and McNally is the managing member.  Id. ¶ 1.  After the company was formed, PR Holdings acquired and subsequently sold Medical Eye Services, Inc..  Id. ¶ 19.  Rome alleges that his portion of the proceeds from the sale was governed by a side letter ("Side Letter") between Rome and PR Holdings (through McNally).  Id. ¶¶ 21-23.  Rome further alleges that PR Holdings did not distribute any of the funds he was due

under the terms of the Side Letter.  Id. ¶¶ 25-27.
Subsequently, Rome, McNally, and PR Holdings executed a
settlement agreement ("Settlement Agreement") to resolve the
dispute regarding the payment Rome alleged he was owed.  Id. ¶¶
28-34.  Rome alleges that he did not receive the payment he was
owed under the Settlement Agreement, and that McNally secretly
directed the payment to himself.  Id. ¶¶ 35-44.

## II. STANDARD OF REVIEW

To withstand a motion to dismiss, a complaint must "state a
claim upon which relief can be granted . . . ."  Fed. R. Civ. P.
12(b)(6).  The complaint must include sufficient factual
allegations that, accepted as true, "state a claim to relief
that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007).  Courts "draw every reasonable inference"
in favor of the plaintiff, Berezin v. Regency Sav. Bank, 234
F.3d 68, 70 (1st Cir. 2000), but they disregard statements that
"merely offer legal conclusions couched as fact or threadbare
recitals of the elements of a cause of action," Ocasio-Hernández
v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (brackets,
ellipsis, and quotations omitted).

"Where, as here, a federal court is asked to enforce a
forum-selection clause, federal common law supplies the rules of
decision."  Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48
F.4th 18, 30-31 (1st Cir. 2022) (citations omitted).  "It is

[3]

well-established that forum selection clauses 'are prima facie valid . . . .'" Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 18-19 (1st Cir. 2009) (emphasis added) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)). Fundamental to evaluating the effect to afford a forum-selection clause is determining "whether the clause is mandatory or permissive, then whether the claims at issue fall within the scope of the clause, and finally whether the clause should be enforced." CDM Smith Inc. v. Atasi, 594 F. Supp. 3d 246, 261 (D. Mass. 2022) (Saris, J.) (citing Atlas Glass & Mirror, Inc. v. Tri-North Builders, Inc., 997 F.3d 367, 374-75 (1st Cir. 2021)). Mandatory, applicable forum-selection clauses will be enforced unless the objecting party shows "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching . . . [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." Rivera, 575 F.3d at 19 (alteration in original).

Absent a forum-selection clause, the 28 U.S.C. § 1404(a) (or forum non conveniens) analysis involves an evaluation of both the convenience of the parties and various public-interest considerations. Kurra v. Synergy Comput. Sols., Inc., No. 15-cv-13952-ADB, 2016 WL 5109132, at *7 (D. Mass. Sept. 19, 2016)

[4]

(Burroughs, J.) (citing Atlantic Marine Constr. Co. v. United States Dist. Court for W. Dist. of Tex., 571 U.S. 49, 54 (2013) (quoting 28 U.S.C. § 1404(a))).[1]  When a valid forum-selection clause is at play, however, "the plaintiff's choice of forum merits no weight" under the analysis, nor does the parties' private interests.  See Lewis v. Hill, NO. 19-12500-DPW, 2023 WL 4706575, at *8 (D. Mass. July 24, 2023) (Woodlock, J.) (quoting Atlantic Marine, 571 U.S. at 63).  Instead, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  Id. (quoting Atlantic Marine, 571 U.S. at 63-64).  Consequently, the Court must "consider arguments about public-interest factors only," which "rarely defeat a transfer motion."  See id.  "[T]he practical result is that forum-selection clauses should control except in unusual cases."  Atlantic Marine, 571 U.S. at 64.  The foregoing, however, presupposes a "contractually valid forum-selection clause."  Id. at 62 n.5.

---

[1] The United States Supreme Court in Atlantic Marine noted that section 1404(a) "is merely a codification of the doctrine of forum non conveniens for the subset of cases in which the transferee [court] is within the federal court system," and that "because both § 1404(a) and the forum non conveniens doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum."  Atlantic Marine Constr. Co. v. United States Dist. Court for W. Dist. of Tex., 571 U.S. 49, 51 (2013).

**III. ANALYSIS**

The Defendants argue that this action should be transferred to the Southern District of New York, or in the alternative dismissed, based on a forum-selection clause contained in the Settlement Agreement, which provides that:

> Any and all claims relating to, or arising out of, this Agreement shall be brought in a state or federal court sitting in the State of New York, which courts shall have sole and exclusive jurisdiction over any and all claims relating to, or arising out of, this Agreement.

Mem. Supp. Mot. Dismiss or Transfer 5, 7, ECF No. 17.

In response, Rome contends that venue is proper in this district, and that the action is not governed by the forum-selection clause in the Settlement Agreement because (i) it applies only the Settlement Agreement itself and not to his claims based on torts, or the Operating Agreement or Side Letter; and (ii) the Settlement Agreement never took effect, or is otherwise void, based on the Defendants' failure to satisfy its obligations thereunder.  Opp'n Mot. Transfer 6-7, ECF No. 20.  Rome further argues that even if the clause is enforceable as to his claim for breach of the Settlement Agreement, it should not be enforced because it is (i) invalid due to Defendants' fraud and (ii) inapplicable to the majority of his claims.  Finally, Rome argues that public interest factors support keeping the case in this district.  Id. at 11-14.

**A. Application of Law**

Here, the clause is undoubtedly mandatory given that it contains the word "shall."  See Claudio-De Leon v. Sistema Universitario Ana G. Mendez, 775 F.3d 41, 46 (1st Cir. 2014) ("[I]t is axiomatic that the word 'shall' has a mandatory connotation.").  With respect to scope, Rome does not dispute that the clause applies to his claim for breach of the Settlement Agreement (Count II), but he argues that the clause ought not be enforced because the remaining claims are based on the Operating Agreement and Side Letter, and involve torts, which "go beyond the scope of [the clause's] wording."  Opp'n Mot. Transfer 13, ECF No. 20.  The case law instructs otherwise.

"It is the language of the forum selection clause itself that determines which claims fall within its scope."  Rivera, 575 F.3d at 19.  Accordingly, the Court looks to the operative language of the clause, which here states, "[a]ny and all claims relating to, or arising out of, th[e] [Settlement] Agreement . . . ."  Mem. Supp. Mot. Dismiss or Transfer 5, ECF No. 17.

It is well-established that the phrase "relating to" has a broad application.  "[C]ourts describe the phrase . . . 'relating to' . . . [as] broader in scope than the term 'arising out of,' . . . broader than the concept of a causal connection, and to mean simply 'connected by reason of an established or discoverable relation.'"  Huffington v. T.C. Grp., LLC, 637 F.3d

18, 22 (1st Cir. 2011) (citing Coregis Ins. Co. v. American Health Found., Inc., 241 F.3d 123, 128-29 (2d Cir. 2001) (collecting authorities)).  Based on this precedent, the clause easily encompasses Rome's claims.  All of Rome's claims -- not just Count II -- involve allegations relating to the Settlement Agreement.  Indeed, Rome expressly references the Settlement Agreement in Counts III-VII -- either explicitly,[2] or by incorporation.[3]  The fact that these counts are also supported by allegations that involve the Operating Agreement and Side Letter, or "years of misconduct and fraud . . . beyond the specific terms of any one contractual arrangement[,]" Opp'n Mot. Transfer 13, ECF No. 20, does not change this conclusion.

Rome's argument that the clause does not reach his tort claims is belied by the general rule that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties."  Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993).  The tort claims involve the same operative facts as the claim for breach of the Settlement Agreement, to which Rome accepts the clause applies.  Opp'n Mot. Transfer 6, ECF No. 20.  Moreover, with respect to Rome's

---

[2]  E.g., Compl. ¶ 54, ECF No. 1 (Count II); id. ¶ 60 (Count III); id. ¶ 66 (Count IV); id. ¶ 69 (Count V); id. ¶ 85 (Count VI).

[3]  E.g., Compl. ¶ 99 (Count VII).

chapter 93A claim, "[t]he First Circuit has considered . . . Chapter 93A claims to be within the scope of a forum selection clause when they," like here, "would not have been actionable but-for the parties entering the contract." Boom-OS, LLC v. Dom N' Tom, Inc., No. 22-CV-10446, 2023 WL 6378188, at *3 (D. Mass. Sept. 29, 2023) (Wolf, J.) (citing Huffington, 637 F.3d at 22-23). While the claim for breach of the Side Letter is arguably more attenuated, it has a "discoverable relation" to the Settlement Agreement, see Huffington, 637 F.3d at 22, by virtue of the fact that the objective of the Settlement Agreement was to resolve the dispute regarding payments Rome alleges were due to him under the terms of the Side Letter, Compl. ¶¶ 25-34, ECF No. 1.

In any event, even if Count II, or some of the theories supporting the other claims, were outside the scope of the clause, they are nevertheless factually related to claims within its scope and therefore do not warrant the Court refusing to enforce it. See Lambert, 983 F.2d at 1121-22; Boom-OS, LLC, 2023 WL 6378188, at *3 (adopting this approach).

Rome's position that the clause is invalid is without merit. His arguments, which challenge the forum-selection clause by attacking the validity of the Settlement Agreement

itself, are unavailing.[4]  Rome cannot escape a forum-selection clause merely by calling the validity of the contract itself into question.  See Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974); Lambert, 983 F.2d at 1121 (rejecting argument that plaintiff "should be permitted to escape the consequences of the parties' forum-selection merely by alleging tortious conduct relating to the formation (rather than the performance) of their contract") (emphasis in original); see also CDM Smith Inc., 594 F. Supp. 3d at 261 (rejecting argument that the forum-selection clause extinguished upon the termination of the contract and therefore does not apply to the plaintiff's contract-related claims).

Nor is the Court persuaded by Rome's argument that the clause is invalid because McNally's fraud is broader than, and predates, the Settlement Agreement.  It is well-settled that fraud in this context "requires a focused showing that the inclusion in the contract of the forum selection clause itself was the product of fraud or coercion." CDM Smith Inc., 594 F. Supp. 3d at 262 (emphasis in original) (citations and internal

---

[4] Rome argues that the forum-selection clause does not govern his claims because, as a threshold matter, the Settlement Agreement itself (i) never took effect (and thus did not discharge the Side Letter and Operating Agreement) due to McNally's failure to satisfy a condition precedent of that agreement; and (ii) is otherwise void for lack of consideration based on McNally's abrogation of the agreement.  Opp'n Mot. Transfer 6-10, ECF No. 20.

quotations omitted).  Rome fails to argue that the forum-selection clause itself, as opposed to the entire Settlement Agreement, was procured by fraud.  There are likewise no allegations that the clause was induced by overreaching.  Id. ("Overreaching 'refer[s] to one party's unfair exploitation of its overwhelming bargaining power or influence over the other party.'" (alteration in original) (citation and internal quotation omitted)).

To the extent Rome asserts that the clause is unenforceable based on public-interest factors, Rome falls well short of meeting his heavy burden.  To warrant setting aside the clause on public policy grounds, Rome must demonstrate that enforcing the clause would "contravene a strong public policy" of Massachusetts, "whether declared by statute or by judicial decision."  Id. at 262.  Rome identifies no such policy.  His heavy burden is thus not satisfied.

Ruling that the clause is valid, applicable, and enforceable, the Court considers whether transfer or dismissal is warranted.  Since Rome's private interests merit no weight in this analysis, the Court focuses exclusively on public interest factors.  See Atlantic Marine, 571 U.S. at 62 ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause[,]" and "[o]nly under extraordinary circumstances

unrelated to the convenience of the parties should a § 1404(a) motion be denied."). Rome's public-interest arguments fare no better in this context. The Court is likewise unpersuaded that Rome has met "the burden of showing that public-interest factors overwhelmingly disfavor a transfer." Id. at 67. Rome lists several factors in support of his public-policy argument: (i) Massachusetts has a "local interest" in the action, as "all of the defendants . . . relevant property and assets" are Massachusetts-based; (ii) the Settlement Agreement is not the lawsuit's "sole basis"; and (iii) "the Operating Agreement and Side Letter . . . do not provide for any specific venue." Opp'n Mot. Transfer 15, ECF No. 20. How the latter two factors bear on Massachusetts' local interest at all is not clear. That notwithstanding, public interest factors "rarely tip the balance," Amyndas Pharms., 48 F.4th at 35, and here, they are certainly not sufficiently compelling to render this an exceptional case.

Since the clause points to either "a state or federal court sitting in the State of New York," the Court could enforce it by dismissal for forum non conveniens or by transfer pursuant to 28 U.S.C. § 1404(a). See Atlantic Marine, 571 U.S. at 60. "[I]t is typically more efficient to transfer [an] action, as this approach conserves the courts' and the parties' resources." Kurra, 2016 WL 5109132, at *11 (citations omitted). Rome

[12]

indicates no preference for dismissal, nor for transfer to a different New York federal court. Accordingly, the Court finds that it would serve the interests of justice for Rome's complaint to be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). See Boom-OS, LLC, 2023 WL 6378188, at *5.

**IV. CONCLUSION**

Defendants' motion to transfer to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a), ECF No. 16, is **ALLOWED**, and its alternative motion to dismiss on the grounds of forum non conveniens is **DENIED**. In light of this ruling, Rome's motion to attach real estate, ECF No. 10, is **DENIED** without prejudice to his seeking equitable relief in the Southern District of New York.

**SO ORDERED.**

                                        /s/ William G. Young  
                                        WILLIAM G. YOUNG  
                                                JUDGE  
                                                of the  
                                        UNITED STATES[5]

---

[5] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.